# United States Court of Appeals for the Federal Circuit

2007-1236, -1255

CARLOS ARMANDO AMADO,

Plaintiff-Appellant,

v.

MICROSOFT CORPORATION,

Defendant-Cross Appellant.

Vincent J. Belusko, Morrison & Foerster LLP, of Los Angeles, California, argued for plaintiff-appellant. With him on the brief were Hector G. Gallegos, Nicole M. Smith, Brian F. McMahon, and Scott C. Moore.

Joseph A. Micallef, Arnold & Porter LLP, of Washington, DC, argued for defendant-cross-appellant. Of counsel was James S. Blackburn, of Los Angeles, California.

Appealed from: United States District Court for the Central District of California

Judge David O. Carter

# United States Court of Appeals for the Federal Circuit

2007-1236, -1255

CARLOS ARMANDO AMADO,

Plaintiff-Appellant,

v.

MICROSOFT CORPORATION,

Defendant-Cross Appellant.

Appeals from the United States District Court for the Central District of California in case no. 03-CV-242, Judge David O. Carter.

_____

DECIDED: February 26, 2008

_____

Before BRYSON, <u>Circuit Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and LINN, <u>Circuit Judge</u>.

LINN, <u>Circuit Judge</u>.

Carlos Armando Amado ("Amado") appeals from the March 13, 2007 final decision of the U.S. District Court for the Central District of California, <u>Amado v. Microsoft Corp.</u>, No. 8:03-CV-242 (C.D. Cal. Mar. 13, 2007) ("<u>Escrow/Injunction Order</u>"), which dissolved a previously-issued permanent injunction and awarded Amado $0.12 per infringing unit sold by Microsoft Corporation ("Microsoft") during a period of the stay of the permanent injunction. Amado also appeals from two non-final orders of the district court, which extended the stay of the permanent injunction past the date set forth in the original order. See <u>Amado v. Microsoft Corp.</u>, No. 8:03-CV-242 (C.D. Cal. Dec. 1, 2006) (ruling clarified in <u>Amado v. Microsoft Corp.</u>, No. 8:03-CV-242 (C.D. Cal. Dec. 5, 2006)); <u>Amado v. Microsoft Corp.</u>, No. 8:03-CV-242 (C.D. Cal. Sept. 15, 2006).

Microsoft cross-appeals from the Escrow/Injunction Order, challenging the district court's award of $0.12 per infringing unit and the district court's denial of its motion for relief from judgment.

Because the district court did not abuse its discretion by extending the stay of the permanent injunction, by dissolving the permanent injunction, or by denying Microsoft's motion for relief from judgment, we affirm in part. Because the district court failed to adequately explain the basis for its award of $0.12 per infringing unit sold during the stay of the permanent injunction, however, and because recent Supreme Court action may affect post-verdict damages, we vacate in part and remand.

## I. BACKGROUND

Amado is the inventor and owner of U.S. Patent 5,293,615 ("the '615 patent"), which is directed to a "point and shoot interface for linking database records to spreadsheets whereby data of a record is automatically reformatted and loaded upon issuance of a recalculation command." In general terms, the invention of the '615 patent relates to a software program that combines the functionalities of spreadsheet and database software. Claim 21, for example, recites "[a]n apparatus for carrying out spreadsheet calculations using data imported from a database via a point and shoot user interface to select a database record for loading into a specified range of the spreadsheet . . . ."

Amado filed suit against Microsoft on March 7, 2003, alleging that several versions of Microsoft's Office Suite infringed the '615 patent. In June 2005, a jury found the '615 patent valid and infringed and awarded Amado damages for infringing sales equivalent to a $0.04 reasonably royalty. The district court granted Amado's request for

a permanent injunction, but then stayed the injunction until seven days after the resolution or abandonment of any appeal. As a condition of the stay, the district court required that Microsoft make escrow deposits of $2.00 per copy of the infringing software sold during the stay.

Microsoft and Amado appealed from the district court's final judgment. We "affirm[ed] in all respects" and remanded for disposition of the funds deposited in the escrow account. See Amado v. Microsoft, 185 Fed. App'x 953 (Fed. Cir. 2006) ("Amado I"). As relevant to this appeal, on remand the district court: (1) extended the stay of the permanent injunction in order to consider various motions, including Microsoft's motion to dissolve the injunction in light of eBay, Inc. v. MercExchange, LLC, 126 S. Ct. 1837 (2006); (2) subsequently dissolved the injunction; (3) denied Microsoft's motion for relief from judgment based on alleged disclaimers made during post-trial reexamination; and (4) awarded Amado $0.12 per infringing unit from the escrow account for sales made during the period of the stay.

Amado and Microsoft timely appealed these rulings. Both parties contend that the district court erred in assessing a $0.12 royalty for the infringing units sold during the stay. Amado contends the proper award is $2.00 per unit, the amount escrowed, while Microsoft contends the proper amount is $0.04, the amount found by the jury to be a reasonable royalty. Amado also argues that the district court's original injunction order, which granted but stayed the injunction, was incorporated into the mandate in Amado I, thus depriving the district court of authority either to extend the stay or dissolve the injunction. Microsoft contends that the district court erred in denying its motion for relief

from judgment. It also asks us to adjust the damages award in light of the recently decided case of Microsoft Corp. v. AT&T Corp., 127 S. Ct. 1746 (2007).

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

A district court's decision granting, denying, or modifying an injunction in a patent case is reviewed for abuse of discretion. Lab. Corp. of Am. Holdings v. Chiron Corp., 384 F.3d 1326, 1331 (Fed. Cir. 2004).

"In order to prevail on appeal on an issue of damages, an appellant must convince us that the determination was based on an erroneous conclusion of law, clearly erroneous factual findings, or a clear error of judgment amounting to an abuse of discretion." Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1543 (Fed. Cir. 1995).

The denial of a motion under Rule 60(b) is a procedural question not unique to patent law and thus is reviewed under the law of the regional circuit. Univ. of W. Va. Bd. of Trustees v. VanVoorhies, 342 F.3d 1290, 1294 (Fed. Cir. 2003). In the Ninth Circuit, denials of Rule 60(b) motions are reviewed for abuse of discretion. Bateman v. U.S. Postal Serv., 231 F.3d 1220, 1223 (9th Cir. 2000).

### B. Analysis

#### 1. Extensions of the Stay of the Permanent Injunction

The district court's original order staying the permanent injunction stated that the injunction would go into effect "[s]even days after the resolution or abandonment of any appeal." Amado v. Microsoft Corp., 8:03-CV-242, slip op. at 28 (C.D. Cal. Aug. 2, 2005). Following remand from this court in Amado I, Amado moved to enforce the

2007-1236, -1255                   4

injunction as having become effective on August 30, 2006—seven days after the mandate issued. The district court denied Amado's motion, interpreting its order staying the injunction through any pending appeal to include a petition for certiorari to the Supreme Court. Amado v. Microsoft Corp., No. 8:03-CV-242, slip op. at 2 (C.D. Cal. Sept. 15, 2006).

The Supreme Court denied certiorari on November 27, 2006. On November 30, Microsoft moved to extend the stay of the injunction. On December 1, the district court granted the request, and on December 5, clarified its ruling as follows:

> [A]s to the stay, the Court has reconsidered the August 5, 2005 order lifting the stay seven days after the resolution or abandonment of any appeal. The Court believes that the more prudent course is to leave the stay in place, pending resolution of the motions that will be heard on February 5, 2006[, regarding the stay-related escrow, the injunction, or any remaining issues]. Therefore, the stay of the permanent injunction will remain in place until 7 days after the Court rules on the February 5, 2006 motions.

Amado v. Microsoft Corp., No. 8:03-CV-242, slip op. at 2 (C.D. Cal. Dec. 5, 2006); see also Amado v. Microsoft Corp., No. 8:03-CV-242 (C.D. Cal. Dec. 1, 2006).

Amado contends that the district court abused its discretion by staying the injunction more than seven days following the mandate in Amado I because the district court did not possess authority to deviate from the original order staying the injunction once it was incorporated into the Amado I mandate. Microsoft counters that the district court did not abuse its discretion because the propriety of the stay was not appealed and therefore was not within the scope of the mandate in Amado I.

Amado's first assignment of error relates to the district court's interpretation of "appeal" in its order staying the injunction as including a petition for certiorari. A district court's interpretation of its order is entitled to deference unless the interpretation is

unreasonable or is otherwise an abuse of discretion. See Cave v. Singletary, 84 F.3d 1350, 1354-55 (11th Cir. 1996) ("The district court's interpretation of its own order is properly accorded deference on appeal when its interpretation is reasonable."); In re Chi., Rock Island & Pac. R.R. Co., 865 F.2d 807, 810 (7th Cir. 1988) ("We shall not reverse a district court's interpretation of its own order 'unless the record clearly shows an abuse of discretion.' The district court is in the best position to interpret its own orders.") (citations omitted). We have little difficulty concluding that the district court's interpretation of "appeal" as including a petition for certiorari was reasonable, and thus worthy of deference. Consequently, we move to Amado's central argument—that the district court was without authority to extend the stay following the Supreme Court's denial of certiorari.

District courts manage hundreds of civil and criminal cases at any given time. For this reason, they are afforded broad discretion to control and manage their dockets, including the authority to decide the order in which they hear and decide issues pending before them. E.g., Univ. of W. Va. Bd. of Trustees v. Vanvoorhies, 278 F.3d 1288, 1295 (Fed. Cir. 2002) ("This court defers to the judgment of the trial court on matters closely associated with the standard functions of the adjudicative process, as long as that judgment is not an abuse of the trial court's discretion."); Beatrice Foods Co. v. New Eng. Printing & Lithographing Co., 899 F.2d 1171, 1177 (Fed. Cir. 1990) ("A trial court has broad discretionary authority in managing the litigation before it . . . .").

As reflected in the December 5, 2006 order, the district court extended the stay of the permanent injunction so that it could address the various pending motions related to the injunction and the escrow account. Amado contends that the district court

abused its discretion by so doing because once the order was incorporated into the Amado I mandate, the district court was powerless to modify the terms of the injunction or the stay, no matter how extreme the circumstances.

We disagree. As we discuss in more detail below, infra Section II.B.2, district courts possess broad equitable authority to modify injunctions. This broad authority, coupled with the wide discretion to manage the order in which they address issues pending before them, necessarily vests district courts with the authority to extend the stay of an injunction, particularly under these circumstances where it is done to preserve the status quo while motions affecting that injunction are under advisement. Cf. Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir. 1983) ("[B]ecause district courts have broad discretionary powers to control their dockets, stays will not be vacated unless they are 'immoderate or of an indefinite duration.'") (stay of proceedings pending patent reexamination). This principle holds true regardless of whether the order that originally set the terms of the stay is incorporated into an appellate mandate. Cf. Barrow v. Falck, 11 F.3d 729, 731 (7th Cir. 1993) ("An appellate mandate does not turn a district judge into a robot, mechanically carrying out orders that become inappropriate in light of subsequent factual discoveries or changes in the law."). Thus, we hold that the district court did not abuse its discretion by extending the stay of the injunction in order to address pending motions, including motions related to whether that very injunction should be dissolved.

### 2. Dissolution of the Permanent Injunction

Following the Supreme Court's denial of certiorari, Microsoft moved for dissolution of the permanent injunction. It argued that the Supreme Court's recent

decision in eBay made the grant of the injunction inappropriate. The district court agreed and granted the motion. See generally Escrow/Injunction Order at 20. It observed that its initial decision to grant the injunction "was influenced by the controlling Federal Circuit law at the time, which required a case to be 'exceptional to justify the denial of a permanent injunction.'" Id. at 16-17 (citing MercExchange LLC v. eBay, Inc., 401 F.3d 1323, 1339 (Fed. Cir. 2005), overruled by eBay, Inc. v. MercExchange LLC, 126 S. Ct. 1837 (2006)). In light of eBay, the district court reapplied the traditional four-factor test for establishing entitlement to injunctive relief. See eBay, 126 S. Ct. at 1839 ("A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." (citation omitted)). Finding both an absence of irreparable harm[1] and that the public interest would be disserved by granting an injunction, the district court prospectively dissolved the injunction. Escrow/Injunction Order at 19-20.

Amado argues that because the eBay decision was handed down before our decision in Amado I, albeit after the completion of briefing, and because the permanent injunction was included within our mandate in Amado I, the mandate rule foreclosed

---

[1] Amado argues that the district court "improperly concluded that eBay eliminated the presumption of irreparable harm that follows a judgment of validity and infringement." We find it unnecessary to reach this argument, however, because regardless of whether there remains a rebuttable presumption of irreparable harm following eBay, the district court was within its discretion to find an absence of irreparable harm based on the evidence presented at trial.

Microsoft from challenging the injunction or the district court from modifying it. Microsoft argues that the propriety of the permanent injunction was not at issue in the first appeal, and thus was outside the scope of the mandate. Alternatively, it argues that eBay is an intervening decision and is thus an exception to the mandate rule.

A decision is generally considered to be intervening when it comes between an appellate decision and the proceedings on remand. A decision is not intervening, however, if the parties have a reasonable opportunity to raise an issue with respect to that decision prior to issuance of the appellate mandate. Cf. Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs., 443 F.3d 1005, 1014 (8th Cir. 2006), vacated in part on other grounds, 127 S. Ct. 3000 (2007) (determining that Supreme Court decision handed down prior to mandate was not intervening). Thus, whether eBay constitutes an intervening decision, and forecloses application of the mandate rule, turns on whether Microsoft had a reasonable opportunity to claim the decision's benefit prior to our issuance of the Amado I mandate.

The Supreme Court's decision in eBay was handed down on May 15, 2006— after the completion of briefing but prior to oral argument in Amado I. Following issuance of the decision, it was incumbent upon Microsoft, if it desired to do so, either to alert this court that the recently-decided case affected its position on appeal or to explicitly reserve the right to seek retrospective relief from the injunction on remand. Engel Indus., Inc. v. Lockformer Co., 166 F.3d 1379, 1383 (Fed. Cir. 1999). This it did not do, even when questioned as to its position at oral argument. Amado I, 185 Fed. App'x 953 (Fed. Cir. 2006), Appeal Nos. 2005-1531, -1581, Oral Arg. at 5:57–06:13, available at http://www.cafc.uscourts.gov/oralarguments/mp3/2005-1531.mp3. Because

Microsoft had a reasonable opportunity to raise an issue with respect to eBay prior to issuance of our mandate, and, indeed, expressly declined that opportunity, eBay is not an intervening decision and thus does not preclude application of the mandate rule.

The mandate rule provides that "issues actually decided [on appeal]—those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration." Engel Indus., 166 F.3d at 1383. Thus, "[a]n issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived." Id. Neither party raised the propriety of the permanent injunction in Amado I. However, because the mandate rule precludes reconsideration of any issue within the scope of the judgment appealed from—not merely those issues actually raised—the proper inquiry is whether the district court's grant of the permanent injunction was within the scope of the judgment appealed from in Amado I.

Microsoft and Amado both appealed from the amended judgment entered on August 2, 2005, which expressly noted that a permanent injunction and stay had been entered. Amado v. Microsoft Corp., No. 8:03-CV-242, slip op. at 2 (C.D. Cal. Aug. 2, 2005). Thus, there can be no question that the grant of the permanent injunction was within the scope of the Amado I mandate. Because Microsoft failed to challenge that grant, it became a part of our mandate. Accordingly, the mandate rule operates as a bar to the district court's reconsideration of the initial issuance of the injunction.

There is a fundamental difference, however, between the granting of retrospective relief and the granting of prospective relief. While the mandate rule would prevent the district court from dissolving the injunction ab initio, it does not preclude the

district court from modifying, or dissolving, the injunction if it determines that it is no longer equitable. This principle is made explicit in Rule 60(b), which provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding . . . [if] applying it prospectively is no longer equitable . . . ." Fed. R. Civ. P. 60(b)(5) (emphasis added). Due to the equitable nature of injunctive relief, district courts have wide discretion to determine under what circumstances the grant of injunctive relief is appropriate, eBay, 126 S. Ct. at 1841 ("[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts."), and under what circumstances the modification or dissolution of that injunction is warranted, see Sys. Fed'n No. 91 v. Wright, 364 U.S. 642, 647-48 (1961).

We conclude that the district court was well within its discretion in this case to reconsider the prospective application of the permanent injunction on remand in light of the Supreme Court's decision in eBay. We also conclude that the district court's ultimate decision to dissolve the injunction was not an abuse of discretion, when, after applying the traditional four-factor test, it determined that an injunction was no longer equitable under the circumstances.

### 3. The District Court's Escrow Determination

Charged in our last remand with the disposition of the funds placed in escrow during the stay of the permanent injunction, the district court determined that Amado was entitled to $0.12 per infringing unit. The district court "start[ed] with the jury's reasonable royalty of four cents," and trebled the award to $0.12 using the "trebling for willful[ infringement] as a guideline." Escrow/Injunction Order at 33. Amado argues that the district court abused its discretion by failing to award the full $2.00 per infringing unit

placed into escrow. Microsoft also challenges the award, arguing that the district court abused its discretion by awarding more than the $0.04 reasonable royalty found by the jury.

Amado's argument for reversal of the district court's damages award rests on his belief that the district court, in its order staying the injunction, "set" the amount he would receive if he prevailed on appeal. Thus, he argues that the district court did not have discretion on remand "to step in after-the-fact and issue Microsoft a refund." As we expressly observed in our prior opinion, we do not read the district court's order, or the proceedings leading to that order, as setting an amount Amado would receive if successful on appeal: "[W]e wish to make clear that we do not read the district court's August 2, 2005, order—requiring the creation of an escrow account as a condition of the stay of the permanent injunction—as having determined the ultimate disposition of the funds required to be deposited in the escrow account." Amado I, 185 Fed. App'x at 953. Consistent with our understanding of the order, on remand the district court explained:

> In ordering the two dollar per unit escrow payments, the Court ensured that Microsoft set aside the upper limit of any eventual stay-related escrow award. The Court never indicated that Amado would receive two dollars per unit, rather the Court left the determination of how much Amado should receive per unit for another day, observing that this issue could be rendered moot by subsequent developments in the case.

Escrow/Injunction Order at 29. Not only is the district court's interpretation of its escrow order consistent with our understanding, it is reasonable, and thus entitled to deference. Consequently, we reject Amado's claim that he is necessarily entitled to $2.00 per infringing unit.

On the other side of the dispute, Microsoft argues that the district court was entitled to award Amado no more than $0.04 per infringing unit, the amount the jury

found to be a reasonable royalty. We easily dispose of this argument as well. The jury's award of $0.04 per unit was based on Microsoft's infringing conduct that took place prior to the verdict. There is a fundamental difference, however, between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement. Cf. Paice LLC v. Toyota Motor Corp., 504 F.3d 1293, 1317 (Fed. Cir. 2007) ("[P]re-suit and post-judgment acts of infringement are distinct, and may warrant different royalty rates given the change in the parties' legal relationship and other factors.") (Rader, J., concurring). Prior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty. Once a judgment of validity and infringement has been entered, however, the calculus is markedly different because different economic factors are involved. See id. at 1315. This is not a case like Paice, however, where the court's task was to assess an appropriate level of damages for ongoing infringement under circumstances in which an injunction was not warranted. Here, Microsoft was enjoined from further infringing activity yet was permitted to continue only by virtue, and with the imprimatur, of the court-ordered stay.

The district court's escrow award of a $0.12 post-verdict royalty did not expressly consider that Microsoft's infringing sales took place following the grant of an injunction that was stayed. As noted above, the district court had authority to dissolve the permanent injunction only prospectively. Therefore, the royalty determination should have taken into account the fact that the sales, although authorized under the terms of the district court's stay, were nevertheless infringing and subject to an injunction. Here, the district court centered its damages assessment on willful infringement. But

2007-1236, -1255                              13

willfulness, as such, is not the inquiry when the infringement is permitted by a court-ordered stay. Moreover, the district court, by trebling the amount the jury found to be a reasonable royalty, began with a faulty premise, because as we have noted, that damages award was based on pre-verdict infringement.

When a district court concludes that an injunction is warranted, but is persuaded to stay the injunction pending an appeal, the assessment of damages for infringements taking place after the injunction should take into account the change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability—for example, the infringer's likelihood of success on appeal, the infringer's ability to immediately comply with the injunction, the parties' reasonable expectations if the stay was entered by consent or stipulation, etc.—as well as the evidence and arguments found material to the granting of the injunction and the stay.

Because we are unable to determine whether the district court's award of $0.12 was a reasonable exercise of its discretion, id. ("It is important for the district court to provide a concise but clear explanation of its reasons for the fee award." (internal punctuation modified) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983))), we vacate the district court's escrow award and remand the matter to the district court for reconsideration.[2]

---

[2] We take no position on the proper amount of the eventual award. That, of course, is a matter committed to the sound discretion of the district court. We observe only that, logically, the eventual award should fall somewhere between the $0.04 amount the jury found to be an appropriate pre-verdict reasonably royalty and the $2.00 amount Amado was willing to accept in exchange for a license.

### 4. The District Court's Denial of Microsoft's Rule 60(b)(6) Motion

Following the district court's entry of judgment, Microsoft moved for relief from judgment pursuant to Rule 60(b)(6) based on statements made by Amado during reexamination of the '615 patent filed by Microsoft. The district court denied Microsoft's motion. Microsoft argues that the district court's "refusal to consider" its motion for relief from judgment under Rule 60(b)(6) was an abuse of discretion. Amado counters that the district court appropriately denied Microsoft's motion because Microsoft was at fault for the delay in bringing the statements to the district court's attention.

Rule 60(b)(6) "grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 (1988) (citation omitted). In order to obtain relief, the moving party must demonstrate "'extraordinary circumstances' suggesting the party is faultless in the delay." Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 393 (1993).

Following the district court's entry of judgment, Microsoft filed a petition for reexamination of the '615 patent. It later moved for relief from judgment pursuant to Rule 60(b)(6), arguing that Amado surrendered claim scope during the reexamination in order to secure issuance of the claims:

> This motion is made upon the grounds that Amado's representations to the United States Patent and Trademark Office during the reexamination of U.S. Patent No. 5,293,615 have limited the scope of claim 21, the only claim the jury found infringed. Such representations apply retroactively to the scope of the patent, and accordingly, there can be no infringement under the grounds that Amado advanced at trial.

J.A. at 2816. The district court denied the motion, noting that although Microsoft was aware of the prior art upon which its reexamination petition was based well before trial, it failed to file the reexamination petition until after the unfavorable judgment was entered. It determined that the newly-discovered evidence Microsoft sought to use to set aside the judgment—namely, Amado's statements to the PTO—was a result of Microsoft's lack of diligence in filing the petition.

The district court thus concluded that the circumstances surrounding Microsoft's motion did not warrant relief from judgment: "Given that Microsoft waited until after the judgment in this case to file its Petition for Reexamination, while simultaneously failing to appeal the jury's finding of validity, Microsoft was not faultless in the delay and justice does not require overturning a jury verdict at this late stage based on statements made to the PTO." Escrow/Injunction Order at 14.

Because extraordinary circumstances have not been shown, we conclude that the district court did not abuse its discretion when it denied Microsoft's motion for relief from judgment under Rule 60(b)(6).

### 5. Adjustment of Damages under Microsoft v. AT&T

Microsoft argues that any damages award to Amado must be adjusted in light of AT&T. AT&T, which was decided by the Supreme Court after the parties filed this appeal, held that liability under 35 U.S.C. § 271(f) does not extend to the installation of software onto a computer abroad when the copies of that software are made abroad, because in such case the copies are not "supplied" from the United States within the meaning of the statute. 127 S. Ct. at 1756, 1757. Consequently, Microsoft argues that "[a]ny damages awarded to Amado should . . . be limited to products manufactured or

sold in the United States." Amado counters that Microsoft failed to appeal liability under § 271(f) in Amado I, and thus its liability is cemented by the mandate rule.

We first address Amado's contention that the mandate rule precludes Microsoft from receiving the benefit of the AT&T decision. As previously noted, the mandate rule forecloses reconsideration of issues implicitly or explicitly decided on appeal. Engel Indus., 166 F.3d at 1383. The mandate rule does not, however, affect issues that have been "explicitly reserved or remanded." Id. Microsoft's request for application of the AT&T decision does not relate to the damages award for pre-verdict infringement, which we affirmed in Amado I. Rather, Microsoft seeks to have the decision applied only to the district court's March 13, 2007 award for post-verdict sales. That issue was not addressed by the Amado I panel and was, in fact, specifically reserved for the district court on remand. See Amado I, 185 Fed. App'x at 953. Consequently, the issue is not foreclosed by the mandate rule.

It is well-settled that "[w]hen [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [] announcement of the rule." Harper v. Va. Dep't of Taxation, 509 U.S. 86, 97 (1993). Although we conclude, pursuant to Harper, that Microsoft is entitled to assert the AT&T decision, we are unable to determine whether the infringing products sold by Microsoft were provided in such a way as to not be "supplied from the United States" as required to extinguish § 271(f) liability. The district court, which presided over the trial in this matter, is thus better-

suited to decide the applicability of <u>AT&T</u>, and may do so when it reconsiders the proper disbursement of funds from escrow on remand.

## III.  CONCLUSION

For the foregoing reasons, the decision of the district court is

<u>AFFIRMED IN PART, VACATED IN PART, and REMANDED.</u>

## COSTS

No costs.