# United States Court of Appeals for the Federal Circuit

04-1069


PANDROL USA, LP and PANDROL LIMITED,

Plaintiffs-Appellees,

v.


AIRBOSS RAILWAY PRODUCTS, INC.,
AIRBOSS OF AMERICA CORP., ROBERT M. MAGNUSON,
and JOSE R. MEDIAVILLA,

Defendants-Appellants.


Allen I. Rubenstein, Gottlieb, Rackman & Reisman, P.C., of New York, New York, argued for plaintiffs-appellees. With him on the brief was Raymond B. Churchill, Jr.

Richard R. Johnson, Shook, Hardy & Bacon, L.L.P., of Kansas City, Missouri, argued for defendants-appellants.

Appealed from: United States District Court for the Western District of Missouri

Senior Judge Scott O. Wright

# United States Court of Appeals for the Federal Circuit

04-1069

PANDROL USA, LP and PANDROL LIMITED,

Plaintiffs-Appellees,

v.

AIRBOSS RAILWAY PRODUCTS, INC.,
AIRBOSS OF AMERICA CORP., ROBERT M. MAGNUSON,
and JOSE R. MEDIAVILLA,

Defendants-Appellants.

_____

DECIDED:  September 19, 2005

_____

Before CLEVENGER, RADER, and DYK, Circuit Judges.

RADER, Circuit Judge.

The United States District Court for the Western District of Missouri granted summary judgment to Pandrol USA, LP and Pandrol Ltd. (Pandrol) because Airboss Railway Products, Inc., Airboss of America Corp., Robert M. Magnuson, and Jose R. Mediavilla (Airboss) did not produce clear and convincing evidence that U.S. Patent No. 5,110,046 (the '046 patent) is invalid.  Pandrol USA, LP v. Airboss Ry. Prods., Inc., No. 99-0182-CV-W-SOW (W.D. Mo. Oct. 15, 2003) (Opinion).  The district court determined that no reasonable juror could find that the '046 patent fails to satisfy the written description requirement of 35 U.S.C. § 112.  Because the district court's ultimate determinations were correct, this court affirms.

**I.**

The '046 patent claims a railroad track fastening system. '046 patent, col. 2, ll. 45-66. Specifically, the patent claims a rail seat assembly that resists erosion of the concrete rail tie by interposing an abrasion-resistant plate and a layer of adhering material between the rail pad and the rail. Id. Figure 1 from the patent specification shows the invention:



The patent specification describes the preferred embodiment, in part, as follows:

> The improvement of this invention is to provide an abrasion plate 10 between the pad 4 and the tie 1. The plate 10 is smooth edged and incorporates recesses 11 to fit around the clamp supports or shoulder 5.

> The plate 10 may be bonded by layer 12 of adhesive (epoxy resin adhesives are preferred) to the tie 1 or an HDPE closed cell foam of 1.5 mm thickness of the same size and shape as plate 10 fitted between plate 10 and tie 1.

Id. at col. 2, ll. 33-41.

The district court determined on summary judgment that there was no genuine issue regarding whether the '046 patent's original specification satisfies the written description requirement of 35 U.S.C. § 112. Opinion at 7. Specifically, the district court declined to invalidate claims because the specification includes sufficient disclosure to support the claim limitations that include the terms "adhering material" and "sole means," id., both of which were added by amendment during prosecution. Those terms appear in claims 1 and 3. Claim 1 recites:

> An abrasion resistant rail seat for securing a rail to a concrete rail tie of the type in which the rail has a flange and is secured to a concrete rail tie by elastic rail clamps and an elastomeric rail pad insulates the rail from the rail tie, the improvement comprising interposing an abrasion resistant plate between said rail pad and said rail tie, said abrasion resistant plate forming a water tight seal with said rail tie, said abrasion resistant plate being wider than said rail and extending beyond the flange of said rail, and a layer of <u>adhering material</u> between said abrasion resistant rail plate and said rail tie for adhering said plate to said tie, said material being the <u>sole means</u> for <u>adhering</u> said plate to said tie so that the replacement of said abrasion resistant rail plate is facilitated.

'046 patent, col. 2, ll. 46-60 (emphases added). Claim 3 recites: "A rail seat as claimed in claim 2, wherein said <u>adhering material</u> is a closed cell foam pad of one to two millimetres [sic] in thickness and of similar shape to said plate." Id. at col. 2, ll. 63-66 (emphasis added).

This case has already been before this court twice. In the first appeal, this court affirmed the district court's grant of summary judgment of noninfringement of U.S. Patent No. 4,463,898 (the '898 patent), but vacated the grant of summary judgment of noninfringement of the '046 patent and remanded the case for further proceedings. <u>Pandrol USA, LP v. Airboss Ry. Prods., Inc.</u>, 10 Fed. Appx. 837, 840-841 (Fed. Cir. Mar. 27, 2001) (<u>Pandrol I</u>). On remand, Pandrol prevailed, securing a judgment

awarding it damages and an injunction based on a finding of infringement of claim 3 of the '046 patent. Pandrol USA, LP v. Airboss Ry. Prods., Inc., No. 99-0182 (W.D. Mo. Mar. 28, 2002). In the second appeal, this court affirmed the determination of infringement, but vacated the district court's ultimate judgment awarding damages and an injunction pending resolution of the issue of invalidity. Pandrol USA, LP v. Airboss Ry. Prods., Inc., 320 F.3d 1354 (Fed. Cir. 2003) (Pandrol II). This appeal follows from that remand.

**II.**

This court reviews a district court's grant of summary judgment without deference. Kemco Sales Inc. v. Control Papers Co., 208 F.3d 1352, 1359 (Fed. Cir. 2000). Summary judgment is appropriate when the record shows that no issues of fact remain and that the moving party deserves judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Gen. Mills Inc. v. Hunt-Wesson, Inc., 103 F.2d 978, 980 (Fed. Cir. 1997). This court reviews compliance with the written description requirement as a question of fact. Purdue Pharma LP v. Faulding, Inc., 230 F.3d 1320, 1329 (Fed. Cir. 2000). This court reviews the issue of assignor estoppel under an abuse of discretion standard. Carroll Touch, Inc. v. Eletro Mech. Sys., Inc., 15 F.3d 1573, 1579 (Fed. Cir. 1993). Obviousness is a question of law premised on underlying findings of fact. Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966).

Written Description

The district court observed that the "statements in the '046 patent are more than adequate to satisfy the written description requirement of 35 U.S.C. § 112." Opinion at

7. A patent specification must contain an adequate written description. 35 U.S.C. § 112, ¶ 1 (1994).

In 1967, this court's predecessor inaugurated use of § 112 to prevent the addition of new matter to claims. In re Ruschig, 379 F.2d 990 (CCPA 1967). Thus, in a recent application of the written description doctrine, this court noted: "The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not; the applicant for a patent is therefore required 'to recount his invention in such detail that his future claims can be determined to be encompassed within his original creation.'" Amgen Inc. v. Hoechst Marion Roussel Inc., 314 F.3d 1313, 1330 (Fed. Cir. 2003) (citing Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1561 (Fed. Cir. 1991)).

Compliance with § 112 requires sufficient information in the specification to show that the inventor possessed the invention at the time of that original disclosure. See Vas-Cath, 935 F.2d at 1561 ("Adequate description of the invention guards against the inventor's overreaching by insisting that he recount his invention in such detail that his future claims can be determined to be encompassed within his original creation."). The possession test requires assessment from the viewpoint of one of skill in the art. Id. at 1563-64 ("[T]he applicant must . . . convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention." (emphasis in original)); Union Oil Co. of Cal. v. Atl. Richfield Co., 208 F.3d 989, 997 (Fed. Cir. 2000) ("The written description requirement does not require the applicant 'to describe exactly the subject matter claimed, [instead] the description must clearly allow

persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.'" (citation omitted)).

With respect to the "adhering material" claim limitation, the original written description of the '046 patent describes a closed cell foam pad. During prosecution, amendments were made to both the claims and the specification. Thus, for the purposes of the written description analysis, this court's focus is on the original disclosure. In its Pandrol I claim construction, this court determined that "a closed cell foam pad is an 'adhering material.'" 10 Fed. Appx. at 842. In Pandrol II, this court restated: "Both the abstract and the preferred embodiment make clear that a gasket between the rail plate and rail tie, in and of itself, constitutes an 'adhering material.'" 320 F.3d at 1363. In its summary judgment determination, the district court properly reached the same conclusion. Opinion at 7. The written description of the '046 patent discloses an "adhering material," as claimed, in sufficient detail to show possession of the full scope of the invention.

The specification discloses that the invention provides an effective adhesive seal between the plate and concrete rail tie. '046 patent, col. 2, ll. 6-10. The original specification states:

> Preferably the abrasion plate may be adhered to the surface of the concrete tie to ensure that ingress of abrasive particles and water onto the surface of the rail tie is avoided.

Id. at col. 2, ll. 7-10. At another point, the specification describes an effective seal as "essential." Id. at col. 2, l. 6. The '046 patent then discloses two alternatives for achieving this feature: either with epoxy or with an HDPE closed cell foam gasket. The original abstract states:

> The plate may be bonded to the rail tie or a resilient gasket can be interposed between the rail tie and the plate.

'046 patent, abstract. The original specification also states:

> The plate 10 may be bonded by adhesive (epoxy resin adhesives are preferred) to the tie 1 or an HDPE closed cell foam of 1.5 mm thickness of the same size and shape as plate 10 is fitted between plate 10 and tie 1.

Specification of the '046 patent at 4 (as originally filed). Thus, these passages show that one way of providing an effective adhesive seal between the plate and concrete rail tie is a closed cell foam pad.

With respect to the "sole means" limitation, claim 1 says that the adhering material is the "sole means" for adhering the abrasion resistant plate to the rail ties. '046 patent, col. 2, ll. 57-58. The '046 patent describes and shows "a rail 2 which . . . sits on a rail pad 4 interposed between rail 2 and the concrete tie 1." Id. at col. 2, ll. 26-28. "The rail is held in place by rail clamp 6 which is held in clamp support 5" and has a toe portion that "bears down on rail flange 3 through the insulator 7." Id. at col. 2, ll. 29-32. Those passages, however, do not establish that the mechanical clamping system also performs the adhering function. The patent shows that the clamping system secures or clamps some parts mechanically but does not adhere. See id. at col. 1, ll. 66-67 ("However, once in this position [the plate] should not move significantly due to the clamping force of the rail clips."). The record does not show that the pressure exerted by the railed clips causes or contributes to the adhering performed by the HDPE foam. Thus, the disclosed adherents remain the "sole means" for that function.

In addition, the sole means limitation refers to the specific bonding of the rail tie to the rail pad to prevent erosion of the concrete rail tie with a watertight seal. Thus, the foam gasket primarily prevents erosion. In contrast, the primary purpose of the clamps

is to lock or hold the system in place. The district court correctly discerned that the specification provides adequate distinctions between clamping and adhering to show possession of the "sole means" aspect of the claimed invention.

Inventor's Testimony

Invoking the doctrine of assignor estoppel, the district court excluded Mr. Young's testimony. "Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity." Diamond Scientific Co. v. Ambico, Inc., 848 F.2d 1220, 1224 (Fed. Cir. 1988). Thus, an assignor and parties in privity with the assignor are estopped or barred from asserting invalidity defenses. Id. In this case, the district court invoked that doctrine to bar an assignor from testifying against the validity of its own patent.

Courts frequently mention four justifications for the doctrine of assignor estoppel: "(1) to prevent unfairness and injustice; (2) to prevent one [from] benefiting from his own wrong; (3) [to adopt the] analogy [of]. . . estoppel by deed in real estate; and (4) [to adopt the] analogy to a landlord-tenant relationship." Id. (quoting Hal Cooper, Estoppel to Challenge Patent Validity: The Case of Private Good Faith vs. Public Policy, 18 Case W. Res. 1122, 1128 (1967)).

This case relies primarily on the "unfairness and injustice" justification. "[A]n assignor should not be permitted to sell something and later assert that what was sold is worthless, all to the detriment of the assignee." Diamond, 848 F.2d at 1224. "The principle of fair dealing as between assignor and assignee of a patent whereby the assignor will not be allowed to say that what he has sold as a patent was not a patent has been part of the fabric of our law throughout the life of this nation." Id. (quoting

04-1069                                        8

<u>Scott Paper Co. v. Marcalus Mfg. Co.</u>, 326 U.S. 249, 260 (Frankfurter, J., dissenting)). Thus, assignor estoppel prevents an assignor from asserting that its own patent, for which it may have received value upon assignment, is invalid and worthless. The district court properly excluded Mr. Young's testimony on this basis.

The district court also correctly excluded Mr. Young's testimony because Airboss did not produce his expert report before trial. Under Federal Rule of Civil Procedure (FRCP) 26(a)(2), testimony offered as expert opinion requires the offer of an expert report prior to trial. Mr. Young's declaration contains expert opinion because he opines on claim construction and interpretation of the original application. Thus, without an expert report proffered for the record at any time, the district court correctly excluded this testimony on the basis of FRCP 26(a)(2).

<u>Obviousness</u>

The district court excluded some prior art allegedly relevant to the validity of the '046 patent under 35 U.S.C. § 103 because Airboss did not disclose it until the filing of a cross-motion for summary judgment. <u>Opinion</u> at 6. The district court noted that Airboss did not disclose this prior art when other prior art came forth in advance of trial. <u>Id.</u> In addition, Airboss did not propose any jury instructions on obviousness. Rather, the record shows that Airboss explicitly opposed any jury instructions on that subject. <u>Id.</u> Finally, Airboss informed the district court that it was not asserting invalidity based on obviousness. <u>Id.</u> Airboss asserts that the district court abused its discretion in refusing to entertain Airboss's obviousness challenge. The factors cited by the district court support its conclusion that Airboss had waived invalidity based on obviousness. The district court acted within its discretion.

04-1069                                    9

**III.**

In sum, this court affirms the district court's decision that the '046 patent's specification satisfies the written description requirement of § 112. In addition, this court affirms the district court's decision to exclude Mr. Young's testimony in light of the doctrine of assignor estoppel and because Airboss did not produce a timely expert report under FRCP 26(a)(2). Finally, the district court did not abuse its discretion in refusing to entertain Airboss's obviousness challenge.

COSTS

Each party shall bear its own costs.

AFFIRMED